UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

YADI MARK                                              CIVIL ACTION

VERSUS                                                 CASE NO. 15-7103

NEW ORLEANS CITY, et al.                               SECTION: "G"(3)

# ORDER

In this litigation, Plaintiff Yadi Mark ("Mark") alleged that Defendants City of New Orleans and Mayor Mitchell Landrieu (collectively "Defendants") violated the Americans with Disabilities Act ("ADA") and the Rehabilitation Act by failing to provide an adequate number of on-street accessible-designated parking spaces in the French Quarter.[1] Pending before the Court is Mark's "Motion for Rule 11 Sanctions."[2] Having consider the motion, the memoranda in support and in opposition, the record, and the applicable law, the Court will deny the motion.

## I. Background

In her complaint, Mark, a resident of St. Tammany Parish, Louisiana, represents that she is a qualified individual with a disability under the ADA.[3] Mark states that she requires a wheelchair for mobility as a result of a previous spinal cord injury.[4] Mark contends that she visits the New Orleans French Quarter "on a regular basis," but that she has great difficulty in accessing accessible-designated parking spaces due to Defendants' alleged failure to provide an adequate

---

[1] Rec. Doc. 1 at 2–14.

[2] Rec. Doc. 57.

[3] Rec. Doc. 1 at 2.

[4] *Id.*

1

number of on-street accessible-designated parking spaces as required by the ADA.[5]

According to Mark, Defendants provide approximately 1,890 on-street parking spaces in the French Quarter, which, under the 2010 ADA Standards for Accessible Design, would require a minimum of twenty-nine accessible-designated parking spaces.[6] However, Mark avers, Defendants only provide fifteen accessible-designated parking spaces.[7] Mark argues that Defendants have discriminated against Mark in violation of the ADA and the Rehabilitation Act by denying her full access to Defendants' services, programs and activities and by failing to make the City's facilities readily accessible.[8] In response, Defendants assert that, because the parking spaces in the French Quarter are not grouped in a parking lot, the 2010 ADA Standards for Accessible Design and the Rehabilitation Act do not apply.[9]

Mark filed a complaint in this matter on December 24, 2015.[10] On November 29, 2016, the parties filed a "Joint Motion to Approve Consent Judgment and Enter Order of Partial Dismissal,"[11] which was subsequently approved by the Court.[12] Mark's claim for injunctive relief and damages were dismissed with prejudice, and the Court referred the issue of attorneys' fees and costs to the Magistrate Judge.[13] On February 15, 2017, Mark filed the instant motion for

---

[5] *Id.* at 3–4.

[6] *Id.* at 4.

[7] *Id.*

[8] *Id.* at 8–9, 11–14.

[9] Rec. Doc. 14 at 2–3.

[10] Rec. Doc. 1.

[11] Rec. Doc. 38.

[12] Rec. Doc. 40.

[13] *Id.*

sanctions.[14] On March 7, 2017, Defendants filed an opposition.[15] On March 15, 2017, with leave of Court, Mark filed a reply.[16]

## II. Parties' Arguments

### A. *Mark's Arguments in Support of the Motion for Sanctions*

In her motion, Mark alleges that Defendants have engaged in "reckless and unsupported accusations" against Mark that allegedly violate Rule 11 of the Federal Rules of Civil Procedure.[17] According to Mark, Defendants have suggested that Mark's lawsuit is a "classic case of abuse of 'shot-gun' litigation," that Mark has been a "professional pawn" and a "vexatious" litigant engaged in a "shakedown scheme" to "[extort] money," and that Mark's counsel has been focused on the issue of attorneys' fees rather than "focusing on any injustices suffered by the plaintiff."[18] Mark argues that these allegations are untrue.[19] Mark points out that she is a former chair of the New Orleans Advisory Council for Citizens with Disabilities and has worked tirelessly as a civil rights advocate for over twenty years.[20] Mark contends that she has filed sixteen actions under the ADA in the past eleven years to protect and preserve the rights of the disabled community, but that she has never attempted to obtain money in lieu of seeking a change or modification to a defendant's facility.[21] Moreover, Mark states that her counsel has a policy against negotiating attorneys' fees

---

[14] Rec. Doc. 57.

[15] Rec. Doc. 58.

[16] Rec. Doc. 61.

[17] Rec. Doc. 57-1 at 1–2.

[18] *Id.* at 1.

[19] *Id.* at 2.

[20] *Id.*

[21] *Id.* at 3.

3

and costs at the same time as negotiating substantive relief for a plaintiff.[22] Thus, Mark avers that Defendants have offered no facts or allegations that demonstrate Mark has a practice of filing frivolous lawsuits or is a "vexatious" ADA litigant, or that she is engaged in a "shakedown scheme" to "extort money" and obtain attorneys' fees.[23] Mark argues that Defendants "never even bothered to depose" her or cite to any evidence in support of their allegations against Mark.[24]

According to Mark, on January 25, 2017, her counsel served Defendants' counsel with a draft Motion for Rule 11 Sanctions, and on February 3, 2017, Defendants' counsel informed Mark that they would not be removing the challenged parts of their pleadings.[25] Mark contends that, pursuant to Rule 11, she filed the motion with this Court once the twenty-one day safe harbor had elapsed.[26]

Mark argues that false statements of unethical or improper conduct constitute a Rule 11 violation.[27] Mark asserts that the Fifth Circuit has determined that "abusive language toward opposing counsel has no place in documents filed with our courts . . . [and] is one form of harassment prohibited by Rule 11."[28] Moreover, Mark points out that the Advisory Committee Notes on Rule 11 provided that the "inclusion of scandalous or indecent matter is itself a strong indication that an improper purpose underlies a motion."[29] Mark cites to *Redd v. Fisher Controls*,

---

[22] *Id.* at 4.

[23] *Id.* at 6.

[24] *Id.* at 7.

[25] *Id.* at 7–8.

[26] *Id.* at 8.

[27] *Id.* at 9.

[28] *Id.* at 8 (quoting *Coats v. Pierre*, 890 F.2d 728, 734 (5th Cir. 1989)).

[29] *Id.* (quoting John G. Koeltl, *The Argument for Civility*, 23 Litigation 66 (Spring 1997)).

4

where a court in the Western District of Texas determined that allegations that defense counsel had a "history of running up large fees, and refusing settlement even when it was in Defendant's best interest" were offensive and damaging to the defendant's counsel and warranted sanctions.[30] Accordingly, Mark argues that Defendants have violated Rule 11 by "littering their pleadings with abusive language, disparaging remarks, and false accusations."[31] Mark requests for the Court to: (1) strike Defendants' offensive pleadings from the record; (2) issue a reprimand in writing against Defendants and circulate the reprimand to all of the District Judges and Magistrate Judges in the Eastern District of Louisiana; and (3) award Mark's counsel attorneys' fees and other expenses incurred as a direct result of the Rule 11 violation.[32]

### B. *Defendants' Arguments in Opposition to the Motion*

Defendants state that they "vehemently oppose" the motion for Rule 11 sanctions.[33] Defendants assert that, contrary to Mark's "cherry-picked citations" of Defendants' memorandum in opposition to Mark's motion for summary judgment on attorneys' fees, Defendants never made any such remarks against Mark.[34] Instead, Defendants point out that they only cited generally to other courts' views on the current landscape of ADA litigation.[35] For example, Defendants represent that they cited several federal district courts in California and Florida for the assertion that "[u]nfortunately, there are increasingly widespread reports of vexatious ADA litigation. Courts have described these lawsuits as 'shakedown schemes' for attorney's fees and statutory

---

[30] *Id.* at 8–9 (quoting 147 F.R.D. 128 (W.D. Tex.1993)).

[31] *Id.* at 9.

[32] *Id.* at 12–13.

[33] Rec. Doc. 58 at 1.

[34] *Id.* at 4–5.

[35] *Id.* at 5.

damages for purposes of exhorting money."³⁶ Thus, Defendants contend that they never asserted that Mark was a "vexatious" litigant "engaged in a shakedown scheme," and that Mark failed to cite to any controlling authority to support her argument that "the City's use of 'implication, inference, innuendo, or insinuation" could be sanctioned.³⁷

Moreover, Defendants contend that, in Louisiana, attorneys are afforded a qualified privilege for statements made in the course of litigation.³⁸ Defendants argue that, "measured under an objective standard of reasonableness under the circumstances," Defendants' opposition memorandum contained no "abusive language, disparaging remarks, or malicious accusations" as Mark contends.³⁹ According to Defendants, "[c]itation to court dicta, observations, and opinions cannot constitute 'abusive language' subject to sanctions."⁴⁰

Additionally, Defendants contend that their argument that this matter was a "classic case of abuse of 'shot-gun' litigation" and that Mark's counsel's "main focus has been on attorneys' fees and costs rather than focusing on any injustices suffered by the plaintiff" was offered as a fair consideration against the awarding of attorneys' fees.⁴¹ Defendants point out that they also alleged in the same paragraph of their memorandum that "attorneys' fees and costs could likely have been avoided altogether if the plaintiff would have provided the City with a pre-suit notice or demand."⁴²

---

³⁶ *Id.* at 4 (citing *Doran v. Del Taco, Inc.*, 373 F.Supp.2d 1028, 1030 (CD. Cal. 2005); *Rodriguez v. Investco, LLC*, 305 F.Supp.2d 1278, 1280-82 (M.D. Fla. 2004); *Steven Brother v. Tiger Partner, LLC*, 331 F.Supp.2d 1368, 1375 (M.D. Fla. 2004); *Molski v. Mandarin Touch Restaurant*, 347 F.Supp.2d 860, 862 (C.D. Cal. 2004)).

³⁷*Id.* at 4–5.

³⁸ *Id.* at 5.

³⁹ *Id.* at 6.

⁴⁰ *Id.*

⁴¹ *Id.* at 4, 6–7.

⁴² *Id.*

Defendants aver that these challenged portions were made in good faith and in support of their push for adopting or modifying existing law to find that a pre-suit demand should be a condition precedent to filing a lawsuit under the ADA in this jurisdiction.[43] Defendants argue that their arguments in opposition to awarding attorneys' fees to Mark were raised in good faith and based on existing law, and thus sanctions cannot be imposed.[44]

Finally, Defendants assert that Mark's motion for sanctions may violate Rule 11 itself, as there is "strong evidence" that it is being used to "intimidate and needlessly burden the City and their counsel."[45] Defendants aver that Mark's motion is "predicated upon exceptionally twisted factual misstatements in an attempt to intimidate or otherwise harass the City," and thus the Court should *sua sponte* impose appropriate sanctions on Mark and her counsel. [46]

C.  *Mark's Arguments in Further Support of the Motion*

Mark argues that Defendants did not just insinuate that Mark filed this lawsuit for improper purposes, but instead "unequivocally impugns the motivations of a decorated disabled civil rights advocate who was exercising her rights under Federal Civil Rights law."[47] Mark asserts that Defendant's statement that this is a "shot-gun" litigation and that Mark's main focus has been on attorneys' fees are factual misrepresentations that violate Rule 11(b)(3), as it lacks evidentiary support, and thus merits sanctions.[48] Additionally, Mark avers that Defendants' abusive remarks

---

[43] *Id.* at 7.

[44] *Id.*

[45] *Id.* at 9.

[46] *Id.* at 9–10.

[47] Rec. Doc. 61 at 1.

[48] *Id.* at 1–2.

and insinuations of impropriety violate Rule 11(b)(1).[49] Mark contends that if Defendants were not attempting to suggest that Mark is a "vexatious ADA litigant" or a "professional pawn," then they should not have included citations to that case law.[50] Mark further asserts that Defendants have never once argued that they were seeking an extension or modification of existing law regarding a pre-suit demand requirement.[51] Moreover, according to Mark, Defendants did not explain what facts they believe were "grossly distorted" by Mark.[52] Finally, Mark points out that, if Defendants had acted on Mark's July 13, 2016 expert report showing that the French Quarter could become ADA complaint for only $7,960.89, instead of refusing to negotiate with Mark for months after, then Mark's demand for attorneys' fees would be a fraction of what they are now.[53]

### III. Law and Analysis

*A.*     *Legal Standard*

Federal Rule of Civil Procedure 11(b) provides that:

By presenting to the court a pleading, written motion, or other paper--whether by signing, filing, submitting, or later advocating it--an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

> **(1)** it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> **(2)** the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> **(3)** the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

---

[49] *Id.*

[50] *Id.* at 2.

[51] *Id.* at 3.

[52] *Id.* at 4.

[53] *Id.* at 5.

> **(4)** the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Therefore, under Rule 11(b), an attorney "violates Rule 11 if he fails to conduct a reasonable inquiry into the law and facts underlying his motion, or if he makes a motion to delay, harass or increase the costs of litigation."[54] Rule 11(c) continues that, "[i]f, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation."[55]

"In determining compliance *vel non* with each obligation, the standard under which an attorney is measured is an objective, not subjective, standard of reasonableness under the circumstances."[56] "An attorney's good faith is . . . [not] enough to protect him from Rule 11 sanctions."[57] Finally, "[c]ompliance with an attorney's affirmative duties"—whether it be establishing a sufficient legal basis or eschewing an improper motive—"is measured as of the time that the document is signed."[58]

"In deciding whether a reasonable inquiry into the law has been made a district court may consider how much time the attorney had to prepare the document; whether the document contains

---

[54] *Walker v. City of Bogalusa*, 168 F.3d 237, 241 (5th Cir. 1999).

[55] Fed. R. Civ. P. 11(c)(1).

[56] *Whitehead*, 332 F.3d at 802 (citations and internal quotation marks omitted); *see also Thomas v. Capital Sec. Servs., Inc.*, 812 F.2d 984, 988 (5th Cir. 1987) ("Rule 11 compliance is measured generally by an objective standard of attorney performance.").

[57] *Childs v. State Farm Mut. Auto. Ins. Co.*, 29 F.3d 1018, 1024 (5th Cir. 1994).

[58] *Id.*

a plausible view of the law; whether the document is filed by an attorney or a *pro se* litigant; and the complexity of the legal and factual issues in question."[59]

Likewise, in deciding whether a filing was made for an improper purpose, a court is to determine whether "it is objectively ascertainable that an attorney submitted a paper to the court for an improper purpose."[60] Because of the objective inquiry, a district court can read an improper motive into a document well-grounded in fact and law under exceptional circumstances.[61] The key is whether "the improper purpose is objectively ascertainable."[62] A district court's decision regarding Rule 11 sanctions is reviewed for abuse of discretion.[63]

Under Rule 11(c)(2), a motion for sanctions by a party must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b).[64] "The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets."[65]

## B. *Analysis*

Mark argues that sanctions under Rule 11 should be issued against Defendants for their "reckless and unsupported accusations" made in Defendants' opposition memorandum to Mark's motion for summary judgment on attorneys' fees and costs, in which Defendants argued that

---

[59] *Thomas*, 812 F.2d at 988.

[60] *F.D.I.C. v. Maxxam, Inc.*, 523 F.3d 566, 580 (5th Cir. 2008).

[61] *Id.*

[62] *Id.* at 580–81.

[63] *See Thomas v. Capital Sec. Servs., Inc.*, 836 F.3d 866, 872 (5th Cir. 1988).

[64] Fed. R. Civ. Pro. 11(c)(2).

[65] *Id.*

10

"justice considerations weigh against an award of attorneys' fees and costs."[66] In Mark's motion for summary judgment on the issue of attorneys' fees, Mark argued that an award of attorneys' fees and costs was proper "because there are no special circumstances here which would render such an award 'unjust.' Rather, justice considerations weigh in favor of an award for Ms. Mark's attorneys' fees and costs."[67] The ADA provides that "[i]n any action or administrative proceeding commenced pursuant to this chapter, the court or agency, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee, including litigation expenses, and costs."[68] As the Supreme Court and the Fifth Circuit have both held, prevailing plaintiffs in civil rights cases "should ordinarily recover an attorney's fee *unless special circumstances would render such an award unjust.*"[69]

In their opposition memorandum, Defendants argued that, "[c]ontrary to the plaintiff's contentions, justice considerations weigh against an award of attorneys' fees and costs, especially as if [sic] the plaintiff would have given the City notice of these issues, it is possible litigation would have been prevented."[70] Defendants asserted that Mark failed to make any demand on the City prior to filing her lawsuit, and thus she should not be awarded attorneys' fees, "particularly in light of the necessity to seek outside counsel to defend against the onslaught of lawsuits filed."[71] In particular, the allegedly improper comments were made by Defendants when they contended

---

[66] *See* Rec. Doc. 57-1 at 1–2; Rec. Doc. 51 at 23 (emphasis omitted).

[67] Rec. Doc. 47-1 at 12.

[68] 42 U.S.C. § 12205.

[69] *See Newman v. Piggie Park Enterprises, Inc.*, 390 U.S. 400 (1968); *Kirchberg v. Feenstra*, 708 F.2d 991, 995 (5th Cir. 1983).

[70] Rec. Doc. 51 at 23 (emphasis omitted).

[71] *Id.*

that "justice considerations" weigh against an award of attorneys' fees, because, according to Defendants:

> Unfortunately, there are increasingly widespread reports of vexatious ADA litigation. Courts have described these lawsuits as "shakedown schemes" for attorney's fees and statutory damages for purposes of exhorting money. Consequently, "the means for enforcing the ADA(attorney's fees) have become more important and desirable than the end (accessibility for disabled individuals)." Of course, "this type of shotgun litigation undermines both the spirit and purpose of the ADA", and "brings into disrepute the important objectives of the ADA by instead focusing public attention on the injustices suffered by defendants forced to expend large sums to defend the litigation."[72]

Defendants further alleged that "[t]his matter represents a classic case of abuse of 'shot-gun' litigation, in that the plaintiff's main focus has been on attorneys' fees and costs rather than focusing on any injustices suffered by the plaintiff."[73] Defendants went on to contend that "attorneys' fees and costs could likely have been avoided altogether if the plaintiff would have provided the City with a pre-suit notice or demand," and that Defendants had incurred additional attorneys' fees and costs "which could have been avoided" if Mark had first reached out to discuss an agreement with Defendants prior to initiating litigation.[74]

Based on the foregoing, the Court finds that Defendants' comments do not rise to the level of a Rule 11(b) violation. First, Fifth Circuit and Supreme Court precedent interpreting the ADA permit Defendants to make arguments that "special circumstances" render an award of attorneys' fees unjust.[75] In fact, Defendants' assertions arose in response to Mark's contention that there were

---

[72] *Id.* at 24 (citing *Doran v. Del Taco, Inc.*, 373 F.Supp.2d 1028, 1030 (CD. Cal. 2005); *Rodriguez v. Investco, LLC*, 305 F.Supp.2d 1278, 1280-82 (M.D. Fla. 2004); *Steven Brother v. Tiger Partner, LLC*, 331 F.Supp.2d 1368, 1375 (M.D. Fla. 2004); *Molski v. Mandarin Touch Restaurant*, 347 F.Supp.2d 860, 862 (C.D. Cal. 2004)).

[73] *Id.*

[74] *Id.*

[75] *See Newman*, 390 U.S. at 400; *Kirchberg*, 708 F.2d at 995.

no special circumstances which would render an award of attorneys' fees unjust.[76]

Second, much of the language cited by Mark as a violation of Rule 11 comes from Defendants' quotations of other courts. For example, Defendants quoted from *Doran v. Del Taco, Inc.*, where a court in the Central District of California determined that attorneys' fees are not recoverable under the ADA "in the absence of a pre-litigation unambiguous warning notice and a reasonable opportunity to cure the ADA violation."[77] In *Doran*, the court noted that the ADA "has attracted sharp criticism . . . as having been distorted by certain lawyers into a cynical money-making scheme."[78] The *Doran* court went on to cite to other ADA cases where courts have declared a plaintiff to be a "vexatious litigant" or noted that the legitimacy of courts is injured when courts are "complicit in allowing these shakedown schemes to continue."[79] The Ninth Circuit subsequently overturned the district court's decision to not award attorneys' fees on the basis that the plaintiff did not give notice to the defendants prior to filing a lawsuit.[80] However, this Court does not find that direct citations to a district court's strongly worded opinion constitute a violation of Rule 11, particularly when Defendants were arguing for the application of the *Doran* court's reasoning to oppose an award of attorneys' fees here. The central purpose of Rule 11 sanctions, which "is to deter baseless filings in District Court," would not be served by punishing Defendants for their general citations and quotations to case law.[81]

---

[76] Rec. Doc. 47-1 at 12.

[77] 373 F. Supp. 2d 1028, 1029 (C.D. Cal. 2005), *vacated and remanded*, 237 F. App'x 148 (9th Cir. 2007).

[78] *Id.* at 1030.

[79] *Id.* at 1030–31.

[80] *Doran v. Del Taco, Inc.*, 237 F. App'x 148, 149 (9th Cir. 2007) (concluding that the requirement to file a pre-suit notice before filing a complaint under the ADA is "not found in the ADA or the case law").

[81] *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990); *see also Whitehead v. Food Max of Mississippi, Inc.*, 332 F.3d 796, 808 (5th Cir. 2003) (holding that "Rule 11 limits sanctions 'to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated'").

Mark also argues that Defendants violated Rule 11 when they directly asserted that Mark's lawsuit "represents a classic case of abuse of 'shot-gun' litigation" and that Mark or her counsel's "main focus has been on attorneys' fees and costs rather than focusing on any injustices suffered by the plaintiff."[82] The Court finds that these comments also do not rise to the level of a Rule 11 violation. These statements were asserted directly after Defendants quoted from district court cases, in which several courts stated that "shotgun litigation undermines both the spirit and purpose of the ADA"[83] and that some ADA plaintiffs have become "professional pawn[s] in an ongoing scheme to bilk attorney's fees."[84] The Court finds that Defendants' adoption of certain district courts' strongly worded opinions and attempted application of those opinions to the case at hand during a motion for summary judgment on attorneys' fees do not constitute a violation of Rule 11.

In support of her argument that Defendants should be sanctioned for the above assertions, Mark cites to *Coats v. Pierre*, where the Fifth Circuit held that "[a]busive language toward opposing counsel has no place in documents filed with our courts" and "is one form of harassment prohibited by Rule 11."[85] However, that case is clearly distinguishable, as the *pro se* litigant in *Coats* filed a post-trial motion stating that opposing counsel "acted like a little nasty dumb female Mexican pig in heat," and that she was "nothing but garbage."[86] Here, Defendants' quotations and citations to other district courts' language regarding the alleged misuse of the ADA by other litigants do not rise to the level of "abusive language" as identified by the Fifth Circuit in *Coats*. Mark also cites to *Johnson v. Tuff N Rumble Management, Inc.*, where another court in the Eastern

---

[82] Rec. Doc. 51 at 24.

[83] *Molski*, 347 F.Supp.2d at 862.

[84] *Rodriguez*, 305 F.Supp.2d at 1280–82.

[85] Rec. Doc. 57 at 8 & n.17.

[86] *Coats v. Pierre*, 890 F.2d 728, 734 (5th Cir. 1989).

14

District of Louisiana noted that the "inclusion of scandalous or indecent matter is itself a strong indication that an improper purpose underlies a motion."[87] However, that case is also clearly distinguishable, as the *Johnson* court found that sanctions were warranted when the *pro se* plaintiff submitted forged documents to the court while at the same time accusing opposing counsel of having a "mental problem" and of perpetrating a "fraud, perjury and corruption."[88]

Finally, Mark's citation to *Redd v. Fisher Controls* is likewise unpersuasive, as the statements made in this case are clearly less egregious than those sanctioned in *Redd*.[89] In *Redd*, a court in the Western District of Texas determined that sanctions were proper after the plaintiff made clearly "abusive" and "offensive" statements to defendant's counsel and the court, including that the defendants were trying to "cheat" the plaintiff out of her just compensation and that defendant and its counsel "have resorted to Hitlerian rhetorical ploy called the 'Big Lie' by which they pre-emptively accuse the opposition of using the same fraudulent tactics they are using . . . ."[90] Moreover, when the court asked what basis the plaintiff had for making these allegations, the plaintiff further alleged that the court was biased by "political consideration[s]" and was not "justly interpreting the law."[91] By contrast to the cases cited by Mark, Defendants' citation and adoption of other district courts' language regarding attorneys' fees in ADA cases during a motion for summary judgment on attorneys' fees in this ADA case does not indicate "that an improper purpose" underlies Defendants' opposition or otherwise violate Rule 11(b).

---

[87] *Johnson v. Tuff N Rumble Mgmt., Inc.*, No. 99-1374, 2000 WL 622612, at *8 (E.D. La. May 15, 2000) (Vance, J.) (citing Fed. R. Civ. P. 11 Adv. Comm. Notes).

[88] *Id.*

[89] 147 F.R.D. 128, 131 (W.D. Tex. 1993).

[90] *Id.*

[91] *Id.* at 131–32.

Therefore, the Court finds that Mark has failed to show that Defendants' comments constitute a violation of Rule 11. As the Fifth Circuit has noted, "generally, district courts do not sanction attorneys who make nonfrivolous representations."[92] Here, Defendants' comments do not appear to have been made for an "improper," frivolous, or otherwise unwarranted purpose under Rule 11. Rather, they arose in the context of Defendants' arguments on a motion for summary judgment on attorneys' fees in response to Mark's contention that "justice considerations" weigh in favor of awarding attorneys' fees.[93] Accordingly, the Court denies Mark's motion for sanctions.

## IV. Conclusion

Based on the foregoing, the Court finds that Defendants' comments do not rise to the level of a Rule 11 violation. Accordingly,

**IT IS HEREBY ORDERED** that Mark's "Motion for Rule 11 Sanctions"[94] is **DENIED**.

**NEW ORLEANS, LOUISIANA**, this 16th day of May, 2017.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[92] *Whitehead v. Food Max of Mississippi, Inc.*, 332 F.3d 796, 805 (5th Cir. 2003).

[93] *See* Rec. Doc. 51 at 23–34 (Defendants arguing that justice considerations weigh against an attorneys' fee award).

[94] Rec. Doc. 57.